E. L. PARTCH, Receiver, Appellant, v. FRANK L. BOYLE, Appellee.

BANKS AND BANKING: Deposits—Set-off Against Receiver. A depositor in an insolvent bank may, in an action by the receiver to recover rent accruing in favor of the bank *after the appointment of the receiver*, employ his deposit as a set-off.

**LANDLORD AND TENANT:** Rent as "Existing" Debt. Upon the execution of a lease for a specified time at a specified monthly rental, an *existing* debt is created for the entire sum accruing under the lease.

*Appeal from Osceola District Court.*—WILLIAM HUTCHINSON, Judge.

FEBRUARY 12, 1924.

REHEARING DENIED MAY 16, 1924.

ACTION by plaintiff, as receiver of an insolvent bank, to recover five monthly installments of rent due from the defendant to the insolvent bank. The only defense claimed was that of set-off, the defendant having a deposit to his credit in the insolvent bank in an amount exceeding the rent due. Judgment below allowed the set-off, and the plaintiff has appealed.—*Affirmed.*

*I. R. Meltzer,* for appellant.

*W. C. Garberson,* for appellee.

EVANS, J.—The defendant, as lessee, held a lease from the insolvent bank for certain rooms in a building. Such lease bore date April 1, 1922, and was for the period of one year, at a rental of $37.50 per month, payable on the first day of each month in advance. The defendant had paid all installments of rent due up to and including that of August 1, 1922. On August 5, 1922, the bank closed its doors, and proceedings were had pursuant to Section 1877 of the Code of 1897. Pursuant to such provisions, the plaintiff was appointed as receiver. He brought this action to recover the rent accrued from August 1st to January 1st, being a total of $187.50. The defendant pleaded that, at the time of its suspension on August 5th, such bank was indebted to him on a deposit to his credit for $190.62. He prayed that of this amount $187.50 be held as a set-off against plaintiff's claim for rent.

1. BANKS AND BANKING: deposits: set-off against receiver.

The question presented on the appeal is whether installments of rent to accrue in the future under an existing written lease may be met by a set-off of the debt due to the lessee from the insolvent bank, his lessor.

Respective counsel are agreed upon the general proposition that the depositor in an insolvent bank may offset his deposit against any present existing debt owed by him to the bank, as of the date of the suspension of the power of the insolvent bank over its estate, under the provisions of the statute. And this is so whether such present existing debt be due or not. Is an unaccrued installment of rent under a lease for a fixed period an existing debt, within the meaning of the law of set-off? The appellee contends for the affirmative, and the appellant for the negative. There are plausible reason and respectable authority for each of these conflicting views.

2. LANDLORD AND TENANT: rent as "existing" debt.

There is a sense in which the mutual covenants of a lease of real estate, including the promise of the lessee to pay future installments of rent as they accrue, are, in the first instance, an executory contract, and continue to be executory in part until the termination of the lease. If there be a breach thereof at any time, the injured party has the remedy of damages. If the lessor be the injured party, he would be entitled to recover the installments of rent as his presumptive measure of damage, subject, however, to mitigation in the event of the surrender of the premises and of the rerenting thereof by the lessor. There are authorities which hold, in such a case, that the stipulated installments are recoverable as a measure of damage, rather than as an existing debt or promise to pay. Such are the following authorities relied on by the appellant: *People v. Market Street Bank,* 18 Cal. App. 698 (124 Pac. 568) ; *Koegel v. Michigan Trust Co.,* 117 Mich. 542 (76 N. W. 74) ; *McGraw v. Union Trust Co.,* 135 Mich. 609 (98 N. W. 390) ; *Thompson v. Union Trust Co.,* 130 Mich. 508 (90 N. W. 294).

In this state, we have held that such installments constitute an existing debt, and that only time is wanting to render them due, and that recovery may be had thereon as such, and as upon a promise to pay. *Brown v. Cairns,* 107 Iowa 727. In that case, the question arose under the attachment statute, the

plaintiff having sued out a writ of attachment for unaccrued installments of rent. The following quotation from the opinion of Chief Justice Deemer in that case is quite pertinent to the case before us:

"It is said that the statute must be strictly construed, and, if there is no debt within the meaning of the statute, the attachment should be discharged. This is no doubt correct, and the only question to be determined in this connection is whether there was a debt as to which nothing but time was wanting to fix an absolute indebtedness at the time the action was commenced. Appellees contend that there can be no indebtedness for rent until after use and occupation of the leased premises for the time for which the rent is claimed, and they quote the old definition of 'rent,' i. e., that 'it is a certain profit, either in money, provisions, chattels, or labor, issuing yearly out of lands and tenements in return for their use.' If this were what was at one time called an action of assumpsit, to recover compensation for use and occupation of the premises, there would be no doubt of appellee's position. But it is clear that it is not such a case. It is what would be called, under the common-law forms of procedure, an action of debt or covenant on the express promise to pay at a fixed time a certain sum for the use of the premises; and the law seems to be well settled that, in such case, the tenant is liable, notwithstanding he may never use or occupy the premises. When there is a special covenant to pay the rent, the fact that the tenant never occupied the premises, or in any manner took possession of or asserted a right thereto, will not relieve him from liability upon his covenant; but he will be held to pay the rent for the full term. *McGlynn v. Brock*, 111 Mass. 219; *M'Murphy v. Minot*, 4 N. H. 251; *Coy v. Downie*, 14 Fla. 544; *Bussman v. Ganster*, 72 Pa. St. 285. Neither the fact that the premises are destroyed by the casualties of war or by fire will relieve the tenant. In short, nothing, as a general rule, will relieve him from his covenant to pay rent for the whole term, save an actual eviction, a surrender, or an abandonment for legal cause. *Shaw v. Partridge*, 17 Vt. 626; *Fletcher v. M'Farlane*, 12 Mass. 45. Of course, the rent is not due, and cannot ordinarily be collected, until the time arrives for its payment. But the obligation is created when a valid

lease is entered into between the parties, and ordinarily nothing but time is wanting, to fix an absolute indebtedness; for, as we have seen, it is entirely immaterial whether the tenant ever uses and occupies the premises or not. In the case of *Brace v. Grady,* 36 Iowa 352, an action similar to the one under consideration was sustained, as against a demurrer grounded upon the proposition that the rent was not due. See, also, *Clark v. Haynes,* 57 Iowa 96. It will not do to say that there was no debt because the time of payment had not yet arrived. 'A debt is created when one person binds himself to pay money to another. A party becomes indebted when he enters into an obligation to pay.' Webster's Dictionary, title 'Indebted;' *Scott v. City of Davenport,* 34 Iowa 208. See, also, cases cited in 8 Am. & Eng. Encyc. of Law (2d Ed.) 983, 984, 986. In the case of *Rowell v. Felker,* 54 Vt. 526, it is said: The liability of the tenants was fixed by the execution of the lease, and, if they could avoid that liability, the burden was on them to show a failure of consideration for their promise, or some other legal defense. Their promise to pay rent was absolute. It was a debt due to the landlord. It was not dependent upon the happening of such contingency as exempted it from attachment. See, also, *Downer v. Curtis,* 25 Vt. 650. In construing Section 2017 of the Code of 1873, which provides that a landlord shall have a lien for his rent upon all crops grown upon the demised premises, and upon all other personal property of the tenant which has been used upon the premises, during the term, etc., we have uniformly held that the lien attaches to the property for the rent of the entire term, although it can only be enforced for rent due. See *Martin v. Stearns,* 52 Iowa 345; *Gilbert v. Greenbaum,* 56 Iowa 211; *Merrit v. Fisher,* 19 Iowa 354. * * * But it is said that the debt was contingent, and that something other than time was wanting, to fix the indebtedness. One of the provisions of the lease was as follows: 'The parties of the first part hereby reserve the right to sell off any of the outside pieces, not reducing the farm, however, to less than one thousand six hundred acres, reducing the future rental sixty cents per acre per year for such reduction; or to sell the entire farm, subject to the lease, or to a forfeiture to the parties of the second part of one year's rental, said forfeiture being the amount of the rent for the last year of

occupancy of the place by the parties of the second part.' This is said to create such a contingency as that something else than time is wanting, to fix the indebtedness. The consequences of a sale of a part or all of the farm are fully stated in this clause of the lease, and are so plain that implication is unnecessary. This contingency is not one, however, which creates the debt. It is one which may go to defeat it, but not one which must happen in order to fix an absolute indebtedness. If it should happen, it would be a defense *pro tanto* or entire to an action for the rent.''

We think the foregoing is quite conclusive upon us in its application to the present case, and we see little occasion for pursuing the discussion further. As against this, the appellant relies in part upon the case of *Toerring v. Lamp,* 77 Iowa 488, wherein it was held that debts of a debtor to the estate of a decedent for rents accruing after the death of the decedent under a lease entered into by the decedent were not subject to be offset by a debt due from the decedent to such debtor. On first impression, the holding in this case would seem to be inconsistent with that in the *Brown* case, supra. But, upon an examination, we find that the two cases are fairly distinguishable. The latter was an action brought by the administrator of an insolvent decedent, to recover rents accrued since the death of the decedent. One of the basic propositions of the argument and the holding was that, upon the death of the decedent, title to the real estate vested instanter in the heirs, and carried with it all unaccrued installments of rent. As against the heirs, the administrator became entitled to recover the same, under the provisions of the statute, and subject to its limitations. In view of our previous holding in the *Brown* case, it necessarily follows that the unaccrued installments of rent to become due to the insolvent bank were an existing debt at the time of its suspension. Since they were such, the rule of set-off was applicable thereto. We are not free from doubt as to the logical soundness of the *Brown* case, but we are constrained to follow it, as an established precedent of long standing.

The judgment below must, therefore, be affirmed.—*Affirmed.*

ARTHUR, C. J., PRESTON and FAVILLE, JJ., concur.