NEW YORK PRACTICE REPORTS. **385**

Matter of Receiver of New Amsterdam Savings Bank agt. Tartter.

## SUPREME COURT.

In the Matter of the Receiver of The New Amsterdam Savings Bank agt. Jacob Tartter.

*Bond and mortgage to bank — Deposit — Set-off.*

Defendant borrowed, July 5, 1875, of The New Amsterdam Savings Bank, the sum of $5,000, for which he executed his bond and mortgage. On the 20th day of September, 1876, the bank became insolvent and passed into the hands of the plaintiff as receiver. At that time there was due and owing defendant, as a depositor of the bank, the sum of $1,748.01. *Held,* that plaintiff was entitled to a set-off for the amount of his deposit.

*New York Chambers, July,* 1877.

Submission of a case to the court, without action, under section 372 of the Code.

*Wingate & Cullen,* for receiver.

*Jesse R. Furlong,* for defendant.

Westbrook, *J.*— On the 1st day of July, 1875, Jacob Tartter, the defendant, borrowed of the The New Amsterdam Savings Bank of New York city, the sum of $5,000, for which sum he executed a bond to the said bank, and to secure the payment thereof he also gave to the bank a mortgage upon property in Brooklyn.

On the 20th day of September, 1876, the bank became insolvent and passed into the hands of a receiver. At that time there was due and owing Mr. Tartter, as a depositor of

the bank, the sum of $1,748.01. The question submitted is, must Mr. Tartter pay his bond and mortgage in full, or is he entitled to a set-off for the amount of his deposit?

The general right of set-off is well settled. No person can insist upon the payment in full, in money, of a debt due to him, without allowing, by way of counter claim, a debt owing by him to the other. This principle is now embodied in the Code (*sections* 149, 150).

Another principle is equally well settled, and that is, that an assignee of a demand takes it subject to all equities, which existed at the time of such assignment between the original parties to it. And this doctrine has been repeatedly applied to assignees of insolvent debtors and receivers of insolvent corporations who have been compelled to allow, by way of set-off, demands in favor of the debtors existing at the time of the failure against such bankrupt individuals or corporations (*Mell* agt. *Holbrook,* 4 *Edwards,* 560 ; *McLaren* agt. *Pennington and ors.,* 1 *Paige,* 102 ; *Miller* agt. *Receiver of the Franklin Bank, id.,* 444 ; *Matter of Receiver of the Middle District Bank, id.,* 588 ; *Holden* agt. *Gilbert,* 7 *id.,* 208 ; *Rawson's Administratrix* agt. *Copland,* 2 *Sanford's Ch.,* 251 ; *Maas* agt. *Goodman,* 2 *Hilton,* 275 ; *Marsh* agt. *The Oneida Central Bank,* 34 *Barbour,* 298 ; *In the Matter of Van Allen,* 37 *id.,* 225 ; *Robinson* agt. *Howes,* 20 *N. Y.,* 84 ; *Smith* agt. *Felton,* 43 *id.,* 419 ; *Smith* agt. *Fox,* 48 *id.,* 674).

It is claimed, however, that these general principles should not be applied to the present case, because the bond and mortgage of the defendant was a part of the capital of the bank, upon which the depositors relied. The same argument applies to every case of an individual or corporation. In all such instances the debts owing to him or to it make up a part of the capital, upon the faith of which parties deal. The very cases relied upon by the plaintiff to support his argument are against him. In *Holbrook & Ferme* agt. *The Receivers of the American Fire Insurance Company* (6 *Paige,* 220), the chancellor, overruling vice-chancellor McCoun, did allow to

Holbrook, as against his individual bond secured by mortgage, his loss sustained by the great fire of December, 1835, against which he was indemnified by the insolvent corporation, and in so doing (*see pp.* 226, 227), he said: "It is a natural equity, where there are cross demands, that one debt should compensate the other, and that the balance alone should be paid by the party who owes the largest debt; and it is a rule of convenience, merely, which limits the legal offset to liquidated debts, or to those which are capable of liquidation by computation only. It would, therefore, in an ordinary case, be not only inequitable but unconscientious for an insolvent debtor to refuse to liquidate an honest debt due to one of his creditors, as to which there was, in fact, no doubt or dispute, for the sole purpose of depriving such creditor of the benefit of his legal right of set-off; and thus to enable the insolvent to collect a liquidated debt due to himself from such creditor, for the purpose of paying other creditors with the money thus collected. And that which would be unjust and unconscientious, if done by the insolvent himself, certainly cannot be equitable and right when done by the officers of a court of equity who have succeeded to the rights and duties of the insolvent." Another debt, however, due from Holbrook and one Ferme, jointly, could not legally be reduced by the set-off of a claim due to Holbrook alone. As such debt, due to Holbrook alone, was not a legal set-off, it could only be allowed by an application to the equitable power of the court, upon the ground that the claim held by the receiver was, as between Holbrook and Ferme, the debt of the former only, and for which the latter was but the surety. Upon this he said (*page* 232): "I have, therefore, though I confess with some doubt, as to its correctness, arrived at the conclusion that the equitable claims of all the creditors of the company who have suffered loss by the calamitous event which has deprived them of their property and rendered the company insolvent at the same time, to an equal share in the capital stock and funds of the company is equal

to the natural equity of having one unconnected demand satisfy or compensate another in the absence of any statutory provision on the subject."

*Lawrence* agt. *Nelson* (21 *N. Y.*, 158) the other case, relied upon by the plaintiff, was one of a mutual insurance company. If the company had not been a mutual one, judge WRIGHT (*page* 160) admits the rule claimed by the defendant, in these words: "I suppose that ordinarily, when an insolvent insurance company (no mutual relations and obligations existing among its corporators) seeks to enforce payment of a debt owing to such company for insurance premiums or otherwise, the debtor is equitably entitled to set off an adjusted loss due to him against the claim of the company. It would be inequitable to compel full payment by the debtor, and leave him to lose his debt which had accrued before the insolvency of the company." Having recognized the general right of set-off, as against the receiver of an insolvent corporation, the learned judge proceeds (*same page*), to show why that rule could not apply to the case before the court, and, in so doing, says: "It is different when the company is a mutual one, and the insured a member or corporator — an insurer as well as a party insured — and the association has no dealings in regard to insurance except with its own members. The party has entered voluntarily into engagements with others modifying, or entirely changing, as between themselves, the effect or application of the general rules of law or equity in regard to set-off. In a company of mutual insurers, each sufferer is bound to make compensation as well as to receive it. He occupies the double relation of debtor and creditor, and it would be inequitable to allow him, when the funds of the company are not adequate to pay all losses, to set off his entire demand; thereby getting more than his share of, and decreasing, a common fund to which all the creditors, *pro rata*, are entitled. Each member is interested in the premiums as well as losses of all the others, and the premium paid by each is saddled, as it were, with its propor-

tionate share of the claims of all others. The premium, whether paid or secured to be paid, is withdrawn from his control, in contemplation of law, and placed in a common fund, not subject to his claims only, but those of all others in the company ; he, in turn, having a similar claim on the premiums of his associates. The members of the association virtually agree to insure each other, and provide a common fund to indemnify in case of loss. As all have contributed to this fund, they have a community of interest in it, and each member having his proportionate share of the losses, is entitled to his proportionate share of the profits, if they are realized."

The conclusion reached, both on reason and authority, is (using the language of the question submitted), that " the said Jacob Tartter " is " entitled to credit in the sum of said seventeen hundred and forty-eight dollars and one cent upon the aforesaid sum of five thousand dollars and interest claimed to be due on said bond." An order to that effect and in conformity with the stipulation contained in the agreed case will be entered.